## THE NELLIE.

### (District Court, E. D. New York. June 6, 1905.)

Collision—Yacht Dragging Anchor—Negligent Anchorage.

A heavy yacht, 46 feet long, was made fast by her owner to a spar buoy having an anchor of 250 pounds weight, near a shipyard, under an agreement with the owner of the shipyard that he would pull her out and store her for the winter. About the middle of November, when she had been there two weeks with no one on board, she dragged the anchor in the night during a heavy wind, and came into collision with and sank libelant's yacht, which was moored near by. The wind had been high the day previous, attaining a velocity toward night of 46 miles, but no attention had been given to the yacht by the owner of the shipyard. Held, that he was the agent of her owner, and his negligence in not removing her or seeing that she was safely anchored in view of the condition of the weather rendered her liable for the damage to libelant's yacht.

In Admiralty. Suit for collision.

David Carll, for libelant.
Wing, Putnam & Burlingham, for claimant.

THOMAS, District Judge. On the east shore of City Island, N. Y., there is a shipyard owned by one Robertson, and opposite the same, and about 300 feet from the shore, is a spar buoy moored to an anchor of the mushroom form, weighing 250 pounds. Some distance below the libelant has a shipyard, and in the adjacent water, on November 13, 1904, was the Miss Swift, an open automobile launch. At the same time, at Robertson's mooring, the yacht Nellie was made fast by the loose end of the anchor chain, which was run out some 30 or 35 feet. On November 13th there was a heavy wind,

which continued during the night. The weather records in New York City show a northeasterly and northerly wind during the afternoon of November 13th reaching a velocity of 38 miles between 5 and 6 o'clock, changing to northwest between 8 and 9 o'clock, and decreasing to not less than 30 miles before midnight, and then increasing to 43 miles before 6 a. m. of November 14th, and to 56 miles between 6 and 7 o'clock. On the 13th the highest velocity was 46 miles at 5:40 p. m., for five minutes. It was evidently a severe wind, but, as the evidence shows, not more than was expectable at that time of year and in that locality. During the night of November 13th the Nellie dragged her anchor, so that on the morning of the 14th, at about 6 o'clock, she was found afloat on the starboard side of the Swift, with her bobstay broken, some marring of her starboard side, her chain extended forward over the line of the Swift, and still connected with the mushroom anchor, which lay forward and to the starboard of the Swift, and, as the witness Mulligan states, such chain was wound around the Swift's painter. The Swift herself was sunk, still attached to her mooring, and there was injury on her port side as if a vessel had scraped along the same, and near her port quarter her side was broken in so as to allow the water to enter and sink her. Notwithstanding this conjunction of the vessels, the claimant urges that the Nellie did not injure and sink the Swift. But the situation of the vessels and the evidence of the injury borne by each leaves no room for doubt that the Nellie did collide with the Swift, injure her, and cause her to sink. The Nellie had been made fast to Robertson's buoy about two weeks before the accident, with the consent of Robertson, by her owner, and had been left in charge of one Hansen, who had a shipyard immediately below Robertson, and had entered into an agreement to draw out the Nellie and store her for the winter. The evidence does not show that the Nellie was improperly moored at the outstart, although the libelant urges that the chain which held her to the Robertson buoy was somewhat too short for holding her securely. There was no person on the Nellie, as the owner had agreed with Hansen to pull her out before the accident happened. It further appears that the mushroom anchor had been in place for two years and a half, and had been often used for holding vessels of the size of the Nellie, the length of which was 46 feet over all. The Nellie, for her size, was a very heavy boat, with a tall mast. The question is whether anybody who owed the duty of taking care of the Nellie was guilty of such neglect as to make the yacht liable for injury. The fact is that the claimant, after having properly moored his boat in anticipation of her early withdrawal and storage for the winter, left her in charge of Hansen, who, so far as appears, gave her no attention whatever. The claimant, so far as his individual action is concerned, is exculpated; but Hansen was his agent, and his culpable fault is chargeable to the vessel. The yacht dragged down upon the Swift and sank her. That requires explanation. None is given, save that a heavy wind blew, and made her drag her anchor. But what attention did Hansen pay to the wind?

There was no one aboard the Nellie, and this emphasized his duty to give her some supervision. There is no evidence that he gave her any. When the wind blew, even for five minutes, at 46 miles per hour at 5:40 o'clock, November 13th, and was blowing during the afternoon of that day at the velocities indicated, Hansen had full notice of serious weather conditions present and promised, and it was his duty to bestir himself, and make provision for the safety of the yacht; at least to examine whether any further security was needed. The nautical habit of laying up untenanted vessels and trusting to the forbearance of the elements for escape from injury is too often disclosed in court. Care, diligence, observance of the rights of others, are demanded of the owners of vessels at docks and at anchor. Hansen, with the storm at his very door, should have shown some vigorous oversight of property committed to him. One burdened with such a duty may not be idle while an increasing storm makes his charge a menace to the property of another.

The libelant should have a decree.